AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
**8/28/2024**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MM _____ DEPUTY

United States of America,

v.

MICHAEL RODRIGUEZ

Defendant

Case No.   2:24-MJ-05233-DUTY

**FILED**
CLERK, U.S. DISTRICT COURT
**08/28/2024**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KL _____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. Between on or about the date of August 1, 2024, in the County of Los Angeles, in the Central District of California, the defendant violated Code Section 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm).

This criminal complaint is based on these facts:
   *Please see attached affidavit.*

   ☒ Continued on the attached sheet.

_____
*/s/ Jose Velasco*
*Complainant's signature*

_____
Jose Velasco, Detective LAPD / FBI-TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   ___August 28, 2024___

_____
*Judge's signature*

City and state:   ___Los Angeles, California___

Hon.   Alicia Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Lisa J. Lindhorst (x6772)

## **AFFIDAVIT**

I, Jose Velasco, being duly sworn, declare and state as follows:

## I.  **PURPOSE OF AFFIDAVIT**

1.   This affidavit is made in support of criminal complaints and arrest warrants against Michael Rodriguez ("RODRIGUEZ") and David Granados Mijangos ("MIJANGOS") (collectively, the "TARGETS") for violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm); and 18 U.S.C. § 922(g)(5)(A) (alien in possession of a firearm) (the "Subject Offenses").

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaints and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. **BACKGROUND OF AFFIANT**

3.   I am a detective with the Los Angeles Police Department ("LAPD"). I have worked for LAPD since 2007 and have

served as a Detective since 2015. I have been a Task Force
Officer ("TFO") with the LAPD-Commercial Crimes Division and
Federal Bureau of Investigation ("FBI") Major Theft Task Force
since April of 2024. This Task Force consists of experienced
investigators from both the FBI and the LAPD.

4.    I have received training in the enforcement of the
laws of California and the laws of the United States, including
training in the preparation, presentation, service, and
execution of criminal complaints and arrest and search warrants.
I have also participated in multiple investigations in which I
have used a variety of investigative techniques, including
interviewing suspects and witnesses, speaking with law
enforcement agents and officers, conducting and reviewing
electronic surveillance, executing arrest and search warrants,
analyzing Geo-Fence data, analyzing data from license plate
readers, and collecting and reviewing physical evidence. From
this experience and my conversations with other law enforcement
personnel with substantial experience, I am familiar with the
methods used by individuals engaging in armed robberies and in
the unlawful possession of firearms.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

5.    On April 30, 2024, and again on May 1, 2024, the
TARGETS attempted to rob bank customers at gunpoint shortly
after they exited the bank. During the first attempted robbery,

the TARGETS tried to rob two victims at gunpoint of their Rolex wrist watches, valued at approximately $18,000 and $20,000. During the second attempted robbery, the TARGETS followed an employee of a small business from the bank, where he had drawn $1,000 in cash, to his business, and then attempted to rob him of that cash right outside the door to his business. Both attempted robberies were captured on video. Because all of the victims refused to part with their property, even while being held and threatened at gunpoint, neither robbery was successful.

6.    RODRIGUEZ's role during both robberies was to approach the victims, draw his gun, and try to take the property; MIJANGOS's role was to observe the victims' behavior from inside the bank, communicate with RODRIGUEZ, and then be ready in the getaway vehicle. Law enforcement identified MIJANGOS and RODRIGUEZ through a combination of video footage, DNA evidence, Geo-Fence data, license plate readers, and ultimately MIJANGOS's confession.

7.    Law enforcement also searched both of the TARGETS' homes and found firearms and ammunition in both. Both TARGETS are prohibited from possessing a firearm, as RODRIGUEZ is a convicted felon, and MIJANGOS is an alien.

### IV. <u>PROBABLE CAUSE</u>

8.    Based on my review of incident reports, surveillance footage, and my conversations with the officers who were involved in the investigations into both attempted robberies described below, I know the following:

**A.  On April 30, 2024, the TARGETS Attempted to Rob Two Victims at Gunpoint of Their Rolex Watches**

9.    On April 30, 2024, at approximately 12:00 p.m., two male suspects attempted to rob two victims at gunpoint in the parking lot of the Bank of America at 142 East Olive Avenue in Burbank California. Several people witnessed the robbery, which was also captured on surveillance video. Suspect-2 was inside the bank with the victims moments before the robbery and Suspect-2 drove the getaway car; Suspect-1 approached the victims on foot, brandished a gun, and demanded their Rolex watches.

1.    <u>Two Witnesses Saw Suspect-1 Point a Gun at the Victims, Demand their Rolexes, and then Flee the Scene in a White SUV</u>

10.   According to the victims of this robbery, shortly after they exited the bank, Suspect-1 walked up to them and pointed a gray semi-automatic handgun at Victim-2 and tried to grab his Rolex-brand watch from his wrist. Victim-2 pulled away and refused to hand over the Rolex. Victim-1 commanded Suspect-1 to leave them alone, but in response Supect-1 turned the gun on Victim-1 and said something to the effect of, "give me your watch or I'll shoot," while racking the slide. Victim-1 began retreating and walked around a nearby vehicle, but Suspect-1 followed him. Victim-1 said that because no bullets were ejected when Suspect-1 racked the slide, Victim-1 believed the gun was not loaded. Victim-1 also saw someone nearby on the phone and believed law enforcement was on its way, so in an attempt to stall, he circled the car a few more times as Suspect-1 followed

him, and while Suspect-1 had the gun drawn. Suspect-1 then decided to leave. Victim-1 and Victim-2 followed and watched as Suspect-1 entered the passenger seat of a getaway vehicle, which then fled the scene.

11.   Two people standing nearby witnessed the attempted robbery and relayed what they saw to law enforcement. One was a bank customer "G.R." who was withdrawing cash outside at the time and the other was a bank manager, "L.R." who looked outside to see what was happening after hearing someone shout that a robbery was in progress. Both witnesses confirmed that Suspect-1 pointed his gun at the victims while seeming to demand or grab for their property.

12.   Both witnesses and both victims described Suspect-1 as wearing a reflective construction vest, which as shown below was corroborated on surveillance footage – and the vest was later recovered from RODRIGUEZ's car. Both witnesses and both victims also described the getaway vehicle as a White SUV.

     2.   <u>Video Footage Captures Suspect-1, the Robbery, and the Getaway Car</u>

13.   Video footage from Bank of America corroborates the victims' and witnesses' accounts. The suspect vehicle (a white 4-door SUV Kia Sportage) pulled into the bank of America parking lot at 10:41 a.m. The license plate was not visible on camera. One minute later, the driver exited the car and walked into the bank. The driver ("Suspect-2") was later identified as MIJANGOS. He appears on video to be a Hispanic male, approximately 30 years old, 5'7", 160 lbs., with a short, trimmed beard, a

thicker mustache, wearing tan/brown work boots with light colored soles (which as discussed below, MIJANGOS was wearing what appear to be the same clothing when he was arrested).



14.   The video shows Victim-1 arrive at the Bank in a White Bentley at 10:52 a.m., park, and walk inside. Victim-2 arrived five minutes later, at 10:58 a.m., in a Mercedes, and parked next to the suspect vehicle (the white SUV). Footage shows Victim-2 also entering the bank. Victims 1 and 2 stayed in the bank together for an hour, and then at 11:56 a.m., they left the bank together and walked to Victim-1's Bentley and then to Victim-2's Mercedes.

15.   At 12:00 p.m., as the victims were both standing next to the Mercedes talking, footage shows Suspect-1 approach them on foot, wearing a tan landscaping bucket hat and a yellow reflective vest. While approaching, Suspect-1 used his right

hand to remove an object (according to victim and witness statements, I believe this to have been a firearm, though the object itself is not visible on video) from his waistband area. Once within reaching distance of Victim-2, Suspect-1 reached multiple times for Victim-2's left wrist, but Victim-2 (pictured below) repeatedly pulled his arm away. Victim-2 then retreated behind a vehicle.



16. Footage shows Suspect-1 then turn his attention to Victim-1. Victim-1 ran behind a car and appears to have fallen. Suspect-1 then appears to have reached over the car and pointed the object at Victim-1. Victim-1 stood up and ran away between the vehicles, and Suspect-1 followed him.

17. At 12:01 p.m., Suspect-1 walked away. Both victims followed Suspect-1 until all three men were out of the camera's view.

18.    Traffic camera footage from a nearby intersection shows the suspect vehicle fleeing the scene at approximately 12:02 p.m. The vehicle appears to have dark window tint and no front license plate.



**B.    Two Days Later, Suspects 1 and 2 Attempt to Rob at Gunpoint Victim J.K. who Just Drew Cash at a Bank**

19.    Just two days later, on May 1, 2024, Suspects 1 and 2 attempted to rob another bank customer ("J.K.") at gunpoint shortly after he withdrew cash for his business from a Chase Bank at 19837 Rinaldi Street, Porter Ranch, California.

20.    Video footage from Chase bank shows Suspect-2 (later identified as MIJANGOS) watching J.K. withdraw cash. Specifically, the footage shows J.K. enter the Bank at 10:08 a.m. and walk up to one of the tellers. J.K. later told law enforcement that he drew $1,000 from the teller for his business and then placed the cash into his backpack.

21.  Moments after J.K. entered the bank, video footage shows MIJANGOS entering the Bank wearing black shoes with a white sole (very similar-looking shoes were later recovered from MIJANGO's house). He also appears to have been wearing the same blue collared shirt he wore during the April 30 robbery.

 

22.  Footage shows MIJANGOS sitting down on a chair inside the Bank and appearing to watch J.K. According to a law enforcement report I reviewed, one of the managers at Chase ("R.F.") told law enforcement she remembered seeing a suspicious man watching J.K. In the footage, a Bank employee is seen approaching MIJANGOS and speaking to him, after which MIJANGOS can be seen leaving the bank while J.K. can be seen continuing to watch MIJANGOS after MIJANGOS is seen leaving. R.F. told law enforcement that MIJANGOS then got into a white SUV, then backed

out of a parking spot and waited, idling in the parking lot until J.K. exited the bank. R.F. saw J.K. get into his own car and then R.F. saw a white SUV follow J.K. out of the parking lot.

23.  According to the law enforcement report I reviewed, after drawing the cash, J.K. drove to his business (a commercial establishment, not a residence) on Vanowen Street in Winnetka, California. His business is approximately 7 miles and 15-20 minutes away from the bank. According to J.K., he briefly entered his business and when he walked back outside, Suspect-1 robbed him at gunpoint.

24.  Camera footage from outside his business captured the robbery itself. The footage shows J.K. entering the business with his backpack at 10:42 a.m. Thirty seconds later, footage shows a white SUV pulling up and Suspect-1 (later identified as RODRIGUEZ) exiting the back passenger seat and walking up to the same door J.K. had just entered. Suspect-1 is then seen pacing back and forth outside the door for approximately 15 seconds. In the footage, Suspect-1 is shown wearing a reflective safety vest just like the one Suspect-1 wore during the April 30 robbery.



25.   Another camera angle shows the suspect vehicle (the white SUV, circled in blue below), idling in the parking lot facing the exit, ready to flee, while Suspect-1 is shown pacing around the business (circled in red).



26.   Footage shows J.K. exiting the door of the business at approximately 10:43 a.m., with his backpack still on his arm, and according to J.K., the cash was still inside his backpack at

the time. As J.K. exited the door, Suspect-1 quickly approached
J.K. while brandishing a semi-automatic firearm in his right
hand, after which and Suspect-1 grabbed and yanked hard on
J.K.'s backpack with his left hand.



27.   J.K. and Suspect-1 are seen struggling over the
backpack for approximately 50 seconds. J.K. later showed law
enforcement abrasions on his arm caused by this violent struggle
. During the struggle, Suspect-1 fired the gun twice at the
ground next to J.K.'s feet. The bullets themselves did not hit
J.K.'s leg, but the proximity caused abrasions to J.K.'s shin.
Footage shows the gun appears to have jammed and Suspect-1 re-
racked the slide while pointing the gun at J.K., ejecting a live
round (which law enforcement later recovered).

28.    Suspect-1 also dropped his blue headphones during the struggle, circled in red below (which later were shown to contain RODRIGUEZ's DNA).



29.    After the struggle and the shooting, and without having obtained any of J.K.'s property, Suspect-1 walked quickly to the white SUV and jumped into the back passenger seat. The car then fled the scene.

**C.    Law Enforcement Identifies MIJANGOS as Suspect-2 in Both Robberies Through a Combination of Video, Geo-Fence Data, License Plate Readers, and a Confession**

1.    <u>Video Footage from Chase Bank Shows MIJANGOS Casing J.K. Minutes Before the May 1, 2024 Armed Robbery</u>

30.    A subsequent review of California DMV records for MIJANGOS revealed that he is a 38-year-old, 5'4", 170lb Hispanic male with black hair and brown eyes, consistent with how he appears in the Bank surveillance video from both robberies.

2.    <u>Geofence Data Shows MIJANGOS At the Crime Scene</u>

31.    After obtaining a search warrant for Geofence location data for this Chase Bank location as well as the crime scene of

13

the second attempted robbery, law enforcement obtained Geofence
results identifying a particular customer – a Google
Identification Number belonging to MIJANGOS - as being present
at both the Chase Bank and the crime location at the relevant
times (these two locations are seven miles apart).

    3.   <u>License Plate Readers Reveal that MIJANGOS Owns
the Suspect Car</u>

32. After obtaining details about the suspect car from the
video of the attempted robbery, law enforcements searched
Automated License Plate Reader data from cars that matched that
description near the Bank at the time the suspects left the
bank. That data query revealed that a white 2015 Kia Sportage,
License Plate Number 9CHN125, was near the Bank shortly before
the first attempted robbery and it appeared consistent with the
suspect vehicle used during the April 30 and the May 1 attempted
robberies.

33. According to California DMV records, MIJANGOS is the
registered owner of that SUV and he changed his registered
License Plate Number two weeks after the robbery, from 9CHN125
to 9MGA366. Yet his name and address as the registered owner of
the car did not change.

    4.   <u>At His Home, MIJANGOS Had Shoes Consistent with
what Suspect-2 Wore During the May 1 Robbery, and
on His Feet, He Had Shoes Consistent with what
Suspect-2 Wore During the April 30 Robbery</u>

34. The DMV paperwork revealed MIJANGOS's address to be a
particular address in Wilmington, California ("MIJANGOS's
Residence"). On July 30, 2024, detectives executed a search
warrant authorized by Judge Mildred Escobedo, Superior Court of

the State of California, at MIJANGO's Residence. Before
executing the warrant, detectives met with the apartment manager
who confirmed that MIJANGOS lives there, but clarified that he
lived in Unit 8, not Unit 6. Inside Unit 8, where MIJANGOS lived
alone, law enforcement recovered a pair of black shoes with
white soles that appear to match what Suspect-2 wore on the
surveillance footage from inside Chase Bank before the May 1
attempted robbery.

36.    That same morning, law enforcement arrested MIJANGOS.
At the time of his arrest, MIJANGOS was wearing what seemed to
be the same distinct shoes Suspect-2 was seen on video wearing
shortly before the April 30 attempted robbery: tan construction
boots with light soles.

5.    <u>MIJANGOS Confesses to his Role in Both Robberies</u>

36.    After detectives arrested MIJANGOS, he was informed of
his Miranda rights, waived those rights, and admitted in a
recorded interview to being involved in both the April 30 and
May 1, 2024, incidents. MIJANGOS admitted specifically to
following the victims out of the banks, to intending to help his
accomplice rob them, to knowing his accomplice was usually armed
with a gun, and to being the getaway driver for both attempted
robberies.

**D.    RODRIGUEZ is Identified as Suspect-1**

1.    <u>RODRIGUEZ's DNA Matches DNA on the Headphone
Suspect-1 Dropped While Robbing J.K.</u>

37.    I reviewed a report showing that on July 9, 2024, law
enforcement received DNA results for tests performed on the

headphone Suspect-1 dropped while attempting to rob J.K. at gunpoint on May 1, 2024. The DNA profile obtained from the headphones revealed a 78% match to RODRIGUEZ's known DNA profile, which was already on file on account of his prior felony arrest from 2022 (mentioned below).

        2.    RODRIGUEZ's Appearance and His Limp Matches Suspect-1

38.    According to law enforcement databases, RODRIGUEZ is a 5'10", 180-lb Hispanic male with black hair and brown eyes. When asked in his post-arrest interview about injuries to his leg that might cause a limp, RODRIGUEZ admitted to having an injury to his left leg from a motorcycle accident years ago that prevents him putting his full weight on that leg. From my review of the footage of both robberies, RODRIGUEZ's overall appearance and his slight limp are consistent with that of Suspect-1.

        3.    RODRIGUEZ Had in His Car the Reflective Safety Vest Suspect-1 Wore During Both Robberies

39.    On August 1, 2024, detectives executed a search warrant authorized by Judge Escobedo for RODRIGUEZ's apartment at a particular address in Calabasas, California. The scope of the search warrant included RODRIGUEZ's car. During a search of his car, which was parked outside, detectives found a yellow construction vest that matched what Suspect-1 was wearing during both attempted armed robberies.

**V.  Both Suspects Illegally Possessed Firearms and Ammunition**

40.    As mentioned above, law Enforcement searched MIJANGOS's Residence on July 30, 2024. Inside that home, where he lived alone, they recovered a .38 Special Revolver, Serial

number R103647, and five rounds of .38 Special live ammunition cartridges.



41. MIJANGOS is an alien unlawfully present in the United States and is therefore prohibited from possessing a firearm or ammunition. Specifically, records from the Department of Homeland Security ("DHS") show that MIJANGOS is a Mexican national who Border Patrol arrested on or about September 18, 2023, for conspiracy to enter the United States illegally and conspiracy to transport or harbor aliens. DHS documentation also reveals that after that arrest, MIJANGOS was administratively removed on September 28, 2023, for being an inadmissible alien. I therefore believe MIJANGOS would have known when he reentered the United States, and when he possessed that gun on July 30, 2024, that he had no lawful status in the United States.

42. Law enforcement also searched RODRIGUEZ's home on August 1, 2024, where he lives with his significant other and their infant child. Before the search, detectives asked RODRIGUEZ what they would find at his home. RODRIGUEZ said they

would find a gun. Law enforcement found in RODRIGUEZ's bedroom, in a drawer next to the bed that contained male boxers, a 9mm Glock Semi-Automatic Handgun Bearing Serial Number BDVK835, a magazine loaded with 9 rounds of 9mm Fiocchi ammunition, and a box containing 19 additional 9mm Fiocchi rounds of ammunition.



 

43. At the time that RODRIGUEZ possessed this firearm and ammunition, he had previously been convicted of a crime punishable by more than a year in prison. Specifically, I have reviewed his criminal history from law enforcement database, which shows he was convicted on August 29, 2022, of First-Degree

Burglary, in violation of California Penal Code Section 459, Case No. FWV22000720, in the County of San Bernardino.

**A.   Interstate Commerce Nexus**

44.   On August 23, 2024, FBI SA Rene A. Persaud examined both firearms and the ammunition recovered from both RODRIGUEZ's and MIJANDRO's homes, all of which is described above, and SA Persaud determined that both firearms and each round of ammunition was manufactured outside California and therefore had to have been transported in interstate commerce in order to be present in California.

45.   The items that the TARGETS attempted to take from Victim 1 and Victim 2 at gunpoint on April 30, 2024, were Rolex wristwatches. Rolex is a Swiss watch manufacturer that produces luxury wristwatches in Geneva. Rolex watches are often worn as a status symbol due to their high dollar value. Rolex watches come in a range of prices, from approximately $6,000 on the low end to over $100,000 on the high end. Based on my review of the victims' statements as well as my review of images of the Rolex watches involved in this April 30 incident, and my review of Rolex price information online, I believe that Victim-1's Rolex is worth approximately $20,000 and Victim-2's Rolex is worth approximately $18,000.

46.   The item that the TARGETS attempted to take from J.K. at gunpoint was a backpack filled with $1,000 cash that J.K. drew for his business. The TARGETS watched J.K. withdraw the cash from a bank, followed him to his business, watched him enter his business with the cash, and then attempted to rob him

of that cash right outside his business door. J.K.'s business is
a Tea and Coffee Shop that is part of a chain with more than 90
locations. This shop uses equipment that was manufactured
outside California, and the shop obtains many of its ingredients
from sources outside California.

## VI. CONCLUSION

47.  For all of the reasons described above, there is
probable cause to believe that the suspects committed the
Subject Offenses.


Attested to by the applicant in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by telephone on
this 28th day of August, 2024.

_____
HON. ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE